## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ASLI UYAR, | : | |
| | : | Case No. 3:16-cv-186 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | March 6, 2017 |
| EMRE SELI and YALE UNIVERSITY, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION
## GRANTING EMRE SELI'S MOTION TO DISMISS [DKT. NO. 19] AND
## GRANTING-IN-PART AND DENYING-IN-PART
## <u>YALE UNIVERSITY'S MOTION TO DISMISS [DKT. NO. 23]</u>

I.   <u>Introduction</u>

The Plaintiff Asli Uyar ("Uyar") brings this action alleging sexual harassment and sex discrimination in a ten-count Complaint against defendants Emre Seli ("Seli") and Yale University ("Yale") (collectively, "Defendants").  Seli has moved to dismiss Counts Five, Six, Seven, Eight, and Nine of the Complaint, and Yale has moved to dismiss Counts One, Two, Three, Four, and Ten of the Complaint, for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Seli's Motion to Dismiss [Dkt. No. 19] is GRANTED, and Yale's Motion to Dismiss [Dkt. No. 23] is GRANTED-IN-PART and DENIED-IN-PART.

II.   **Background**

Unless otherwise noted, the following facts are taken from the Plaintiff's complaint.  Plaintiff is a Turkish national who was granted a visa to work in the United States as a post-doctoral fellow at the Yale School of Medicine's Department of Obstetrics, Gynecology and Reproductive Sciences doing research in the area of early embryo genetics.  [Dkt. No. 1 ("Compl.") ¶¶ 4, 6.]  Seli was a Professor of Obstetrics, Gynecology, and Reproductive Sciences at the Yale School of Medicine.  *Id.* ¶ 7.  He ran the laboratory where Uyar performed her fellowship work and he supervised her fellowship research.  *Id.*  Plaintiff's fellowship research was funded by, and her position was dependent on, grant money obtained by Seli, and Seli could at any time decide not to continue funding Plaintiff's position.  *Id.* ¶ 8.  Additionally, to continue to advance in her field, Plaintiff was dependent on positive recommendations from Defendant Seli to obtain other positions or to publish in academic journals.  *Id.* ¶ 9.

In the summer of 2012, Seli, who was married, began to pursue a romantic relationship with the Plaintiff.  The Plaintiff initially rejected his advances, but Seli persisted and Uyar relented in September 2012.  *Id.* ¶¶ 11-12.  Plaintiff claims that she tried to end this relationship repeatedly, but each time, Seli coerced her into continuing the relationship by threatening that Plaintiff would lose her fellowship if she ended it.  *Id.* ¶¶ 13-14.  The Plaintif continued the relationship in order to remain in the United States and pursue her career.  *Id.* at 15.

On May 31, 2014, Seli's wife learned of the relationship. *Id.* ¶ 18. Plaintiff alleges that Seli sought to terminate her relationship with Yale to appease his wife. *Id.* at 19.  On June 1, 2014, Seli sent an email to his department's business manager, claiming that Plaintiff's research "did not look promising for next year and I think we may not renew her appointment," and he forwarded this email to his wife, even though his wife had no professional involvement with the Plaintiff. *Id.* ¶ 20, 24.  The same day, Seli cancelled Plaintiff's research project, and cancelled Plaintiff's flight to and registration at a professional conference she was scheduled to attend. *Id.* ¶ 21, 25.  The cancellation of the Plaintiff's research project prevented her from producing and publishing a major research project during her fellowship. *Id.* ¶ 22.  This cancellation would have been fatal to Plaintiff's academic career prospects. *Id.*  Seli also told the Plaintiff that if she continued coming to work, Seli would tell her friends and family about the relationship in order to ruin her reputation. *Id.* ¶ 23, 28.  He also threatened to ruin her academic career by telling others that she had falsified her curriculum vitae in order to obtain her fellowship at Yale. *Id.* ¶¶ 27, 28.  Plaintiff initially complied with Seli's directive. *Id.*

On June 18, 2014, Yale emailed Seli that her position would expire on August 18, 2014. *Id.* ¶ 31.  On June 24, 2014, Plaintiff reported the relationship and Seli's threats to the Department Chair, who returned Plaintiff to work. *Id.* ¶ 33.  Once she returned to the laboratory, Seli became hostile and threatening when he interacted with Plaintiff, including by

excluding her from meetings and preventing her from working on the laboratory's research projects.  *Id.* ¶¶ 34-35

In order to preserve her professional reputation, Plaintiff succumbed to Seli's pressure, terminated her fellowship at Yale and accepted a position at a less prestigious academic institution.  *Id.* ¶ 37-38. Subsequently, Seli threatened Plaintiff with litigation if she attempted to pursue a sexual harassment claim at Yale, and Yale published her research without crediting her.  *Id.* ¶¶ 39-41.

Plaintiff filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on March 31, 2015, alleging that she was discriminated against in the terms and conditions of her employment, sexually harassed, constructively discharged, and retaliated against by the Defendants.  [Dkt. No. 19-2].  She received a right to sue letter from the Equal Employment Opportunities Commission ("EEOC") on December 1, 2015.  [Compl. ¶ 45, Exh. A].

Plaintiff filed the instant action on February 5, 2015, alleging as to Yale sex discrimination, sexual harassment, and retaliation in violation of Title VII, sexual harassment in violation of Title IX, and negligent supervision, and alleging as to Seli tortious interference with a business expectancy, defamation, negligent infliction of emotional distress, and invasion of privacy.  [Compl. at 1].  Seli and Yale moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 4, 2016 [Dkt. No. 19] and April 15, 2016 [Dkt. No. 23], respectively.

4

III.   <u>Legal Standard</u>

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quotations and citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  (citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be

true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).  Here, Plaintiffs attach the EEOC right to sue letter to her Complaint, and Seli attaches the CHRO complaints to his briefing.  These documents are integral to the Complaint and may be considered.

## IV.  <u>Discussion</u>

### A.  <u>Claims Against Yale</u>

#### 1.  <u>Title VII</u>

Pursuant to Title VII of the Civil Rights Act of 1964, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or

6

privileges of employment, because of such individual's . . . sex."  42 U.S.C.
§ 2000e-2(a)(1).  "[S]exual harassment so 'severe or pervasive' as to 'alter
the conditions of . . . employment and create an abusive working
environment' violates Title VII."  *Faragher v. City of Boca Raton*, 524 U.S.
775, 786 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64
(1986)).  "[A] plaintiff seeking relief for sexual harassment may . . . proceed
under two theories: (1) *quid pro quo,* and (2) hostile work environment."
*Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994).

### a.  Count One: Sex Discrimination

Yale argues that the Plaintiff has failed to state a claim for "sex
discrimination" because she failed to "allege in a nonconclusory fashion,
that she suffered an employment action because of her gender."  [Dkt. No.
24 at 8 (emphasis in original)].  This argument evinces a fundamental
misunderstanding of the law.  "[S]exual harassment *is a form of sex
discrimination* that is actionable under Title VII."  *Meritor Sav. Bank*, 477
U.S. at 57 (expanding Title VII protections from quid pro quo harassment to
hostile work environment harassment).  By alleging facts consistent with
sexual harassment, Plaintiff has stated a claim for sex discrimination under
Title VII.

The Plaintiff does not allege in a separate count that she was
subjected to a "hostile work environment" in violation of Title VII.
However, she has alleged that Seli coerced the Plaintiff into commencing
and continuing their sexual relationship over a long period of time and that

7

he coerced her to leave Yale and accept a less prestigious position. Accepting those allegations as true they undoubtedly describe a workplace which was hostile.  To prevail on a hostile work environment claim, a plaintiff must demonstrate:  (1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.  *Id.*  "The conduct alleged must be severe and pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.'"  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)).  To be actionable, a "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher*, 524 U.S. at 787.

The Plaintiff has alleged that she succumbed to Seli's pressure both in commencing and continuing a sexual relationship with him which she did not welcome; and further, that she reluctantly relinquished a highly prestigious fellowship at Yale in supplication to his pressures and accepted a less prestigious position to preserve her professional reputation.  She has alleged ample facts constituting the subjective prong of the test.  If the Plaintiff were to present persuasive evidence of these allegations, a reasonable jury could find that her work environment was

8

hostile, satisfying the objective prong.  Accepting the Plaintiff's allegations as true, Seli's behavior was both subjectively and objectively hostile.

### b.  Count Two:  Quid Pro Quo Sexual Harassment

To establish a prima facie case of quid pro quo sexual harassment, a plaintiff must "present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis of decisions affecting the compensation, terms, conditions, or privileges of her employment."  *Karibian*, 14 F.3d at 777 (citing *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 898 (1st Cir. 1988)).  Actionable unwelcome sexual conduct includes "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature."  *Meritor Savings Bank*, 457 U.S. at 65.

Yale argues that "a quid pro [quo] claim that involves only unfulfilled threats, is insufficient to sustain a claim."  [Dkt. 24 at 16].  In so doing, they ignore binding Second Circuit precedent regarding employees who submit to advances in order to avoid changes in their employment status.  In *Karibian* the court held:

> [I]n the typical *quid pro quo* case, the employee who refuses to submit to her supervisor's advances can expect to suffer some job-related reprisal.  Accordingly, in such "refusal" cases, evidence of some job-related penalty will often be available to prove *quid pro quo* harassment.  But that is not to say that such evidence is always essential to the claim.  In the nature of things, evidence of economic *harm* will not be available to support the claim of the employee who *submits* to the supervisor's demands.  The supervisor's conduct is equally unlawful under Title VII whether the employee submits or not.  Under the district court's rationale, only the employee who successfully resisted the threat of sexual blackmail could state a *quid pro quo* claim.  We do not read Title VII to punish the victims of

> sexual harassment who surrender to unwelcome sexual encounters. Such a rule would only encourage harassers to increase their persistence.

*Karibian*, 14 F.3d at 778 (emphasis in original).  The court reaffirmed this holding in *Jin v. Metropolitan Life Ins. Co.*, stating:

> *Karibian*'s essential holding that an employer is liable in a *submission* case is sound even under the Supreme Court's new liability analysis . . . .  [W]hen a victim is coerced into submitting to a supervisor's sexual mistreatment, the threatened detrimental economic tangible employment action may not take place.  But that does not mean that use of the submission as the basis for other job decisions does not also constitute tangible employment action.

*Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 98 (2d Cir. 2002).  The Plaintiff alleges that she endured myriad coercive acts affecting her employment and employment prospects in retaliation for her initial refusal to submit to and later capitulation to Seli's sexual demands.  The Plaintiff has alleged that she first rejected and ultimately submitted to Seli's persistent advances in order to maintain her position; and further, that because she succumbed to his advances and his wife learned of his infidelity, her professional reputation, fellowship, professional prospects, personal relationships, and ability to remain in the United States were threatened, forcing her to leave her fellowship and pursue her research at a less prestigious institution.  While this is not the classic quid pro quo case, Plaintiff has stated a claim for quid pro quo sexual harassment.

### c.   Retaliation

Title VII makes it unlawful for employers to retaliate against employees who oppose employment discrimination, or submit or support a

complaint of employment discrimination.  *See* 42 U.S.C. § 2000e-3(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532 (2013).  "'To establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'"  *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)).  This causal connection "can be shown indirectly by timing:  protected activity followed closely in time by adverse employment action."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

Plaintiff has alleged that she informed Yale of Seli's actions on June 24, 2014, and that immediately upon returning to work, Seli began to treat her in a hostile and threatening manner.  This is sufficient to allege retaliation under Title VII.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ("[T]he antiretaliation provision . . . covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant.  In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.").  The Court recognizes that the Plaintiff relies wholly on inference in asserting this claim.  That having been said, the fact that Seli's behavior is alleged to have changed immediately after the Plaintiff reported

the situation to Yale raises a sufficient specter of liability at the motion to dismiss state to cause the Court to decline to dismiss the claim.

### d.  Timeliness

Yale asks the Court to disregard any allegations relating to Seli's conduct before June 4, 2014, arguing that the only timely allegations of adverse actions are an email from Yale informing her that her fellowship would expire on August 18, 2014, and Plaintiff's constructive discharge. The Court disagrees.

A plaintiff must file a discrimination claim within 300 days of the occurrence of the allegedly unlawful employment practice.  42 U.S.C. § 2000e–5(e)(1).  Here, the Plaintiff filed her charge of discrimination with the CHRO on March 31, 2014.  As a result, discrete incidents that occurred more than 300 days before that date, or before June 4, 2014 in this case, generally are time-barred.  However, "under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).  Moreover, "evidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [that] timely claim.'"  *Id.* at 150 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420

F.3d 166, 176 (2d Cir. 2005)).  "Such background evidence 'may be considered to assess liability on the timely alleged act.'"  *Id.*

Hostile work environment claims are paradigmatic examples of continuing violations, because "[t]heir very nature involves repeated conduct," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). While Plaintiff and Seli's sexual relationship ceased before June 4, 2014, his alleged discriminatory conduct continued beyond that date, and as alleged, represents a continuing course of conduct.

## 2. <u>Count Four:  Title IX</u>

Plaintiff asserts that Yale's failure to protect her from Seli's harassment violates Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq., because Yale is a recipient of federal education funds.  However, Title VII is Plaintiff's exclusive remedy.  Plaintiff did not allege that she was a student, and all of the allegations in the Complaint focus on Plaintiff's employment with Yale.  "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII."  *Urie v. Yale Univ.*, 331 F. Supp. 2d 94, 97-98 (D. Conn. 2004). Because all of the allegations in the Complaint relate to the Plaintiff's employment, Count Four must be DISMISSED.

## 3. <u>Count Ten:  Negligent Supervision</u>

"A negligent supervision claim requires a plaintiff to plead and prove that she suffered an injury 'due to the defendant's failure to supervise an

employee whom the defendant had a duty to supervise.'"  *Miller v. Ethan Allen Glob., Inc.*, No. 3:10-CV-1701 JCH, 2011 WL 3704806, at *11 (D. Conn. Aug. 23, 2011) (quoting *Abate v. Circuit–Wise, Inc.*, 130 F. Supp. 2d 341, 344 (D. Conn. 2001)).  "In order to state a claim, a plaintiff must allege that a defendant knew or should have known of another employee's propensity to engage in the alleged tortious behavior."  *Shanks v. Walker*, 116 F. Supp. 2d 311, 314 (D. Conn. 2000).  Plaintiff's Complaint meets this standard.  She has alleged (1) that she notified Yale of Seli's behavior; (2) that Yale returned her to the same lab to continue working with him; and (3) following her return, Seli treated her in a threatening manner.  Yale's motion to dismiss is therefore DENIED with respect to Count Ten.

### B.  Claims Against Seli

Seli has moved to dismiss claims against him for (1) tortious interference with a business expectancy; (2) defamation; (3) negligent infliction of emotional distress; and (4) invasion of privacy.

Seli argues generally that the Court should disbelieve the Plaintiff because some of the statements she filed with her CHRO claim were contradictory.  [Dkt. 19-1 at 5].  For example, in one complaint, she said that she had been constructively discharged, and in the other, she said that she was terminated on September 6, 2014.  *Id.*  However, some of these inconsistencies are less evidence that the Plaintiff is not credible, but rather that the Plaintiff, may not have understood what was legally significant about her experience when she filed her first CHRO complaint

14

*pro se*, and that her attorney filed an amended complaint with this in mind. Moreover, the legal standard on a motion to dismiss requires the Court to accept the Complaint's allegations as true and to consider them in the light most favorable to the Plaintiff.  The Court further notes that the Plaintiff is a Turkish national, residing in this country to pursue scientific research; not advanced research in the humanities or law.  Therefore she is even less facile with legal terminology and is entitled to greater deference than a typical *pro se* litigant.  As a consequence of the deference afforded in cases such as this, the Court declines to dismiss the claims on this basis.

### 1.  Count Five:  Tortious Interference with a Business Expectancy

Plaintiff alleges that Seli interfered with the business relationship between Plaintiff and Yale by making numerous false and defamatory statements about the Plaintiff and her work, and by threatening her and retaliating against her.  These actions, she claimed, forced her to leave her position for a less prestigious and remunerative one, and damaged her professional reputation and career prospects.  Seli argues that he could not interfere with the Plaintiff's business relationship with Yale, because he himself was an agent of Yale, and should not be liable for breaching his own contract.  [Dkt. 19-1 at 6-7].  Seli also claims that Plaintiff did not suffer any professional injury, because Yale returned Plaintiff to work after she complained about Seli's behavior, and her allegations about being excluded from meetings were not sufficient to allege intimidation, molestation, or malice.  *Id.* at 8-9.

15

"A claim for intentional interference with contractual relations requires the plaintiff to establish:  (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct."  *Rioux v. Barry,* 283 Conn. 338, 351 (2007) (citations omitted).  "[N]ot every act that disturbs a contract or business expectancy is actionable . . . .  [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means."  *Larsen Chelsey Realty Co. v. Larsen,* 232 Conn. 480, 502 n. 24 (1995) (quotations and citations omitted).

"[I]t is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties."  *Wellington Sys., Inc. v. Redding Group, Inc.,* 49 Conn. App. 152, 168 (1998) (emphasis in original; quotations omitted).  "[T]here can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contract. The general rule is that the agent may not be charged with having interfered with a contract of the agent's principal."  *Appleton v. Bd. of Educ.,* 53 Conn. App. 252, 267 (1999), *rev'd in part on other grounds*, 254 Conn. 205 (2000) (quotations and citations omitted).  Here the Plaintiff alleges that Seli was more than a Yale employee who supervised her.  She

alleges that he was the awardee of the research grant which created her position and paid her salary, that he had the authority to cancel her major research project and the authority not to renew her employment.  [Compl. ¶¶ 20-21]   Even if Seli was just Yale's agent, "an agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract." *Wellington*, 49 Conn. App. at 168 (quotations and citations omitted).

However, an exception to the general rule applies if the agent "did not act legitimately within his scope of duty but used the corporate power improperly for personal gain." *Id.* (quotations and citations omitted).  In an employment context, this personal gain must be something "beyond the mere removal of the plaintiff from the position." *Tucker v. Eighth Utilities Dist.*, No. TTDCV054002448S, 2007 WL 1470602, at *5 (Conn. Super. Ct. Apr. 23, 2007).  Plaintiff's allegations fit within this exception.  As pleaded, Seli abused his position as Plaintiff's supervisor to damage her career—by constructive discharge and by disparaging the quality of her research—in order to appease his wife.

Nevertheless, Plaintiff has not alleged that she had anything other than an at-will employment relationship with Yale.  Seli "cannot be liable for interfering with the rights of parties to a contract that is terminable at will." *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 7 F. Supp. 2d 119, 132 (D. Conn.

17

1998), *aff'd,* 186 F.3d 74 (2d Cir. 1999); *see also Windover v. Sprague Techs.*, 834 F. Supp. 560, 568 (D. Conn. 1993) (holding that no business expectancy existed in an at-will employee's promotion); *Estela v. Bristol Hosp., Inc.*, No. CV116013260, 2013 WL 4779574, at *10 (Conn. Super. Ct. Aug. 14, 2013) (holding that at-will contracts between a doctor and patients did not create a business expectancy).  Count Five must therefore be DISMISSED.

### 2.  Count Six:  Defamation

Seli argues that his email stating the Plaintiff "did not look promising for next year and I think we may not renew her appointment" was a statement of opinion that cannot give rise to a cause of action for defamation.  [Dkt. 19-1 at 10-11].  He also asserts that Seli's email fell within a privilege for employer communications.  *Id.* at 11.  Plaintiff counters that Seli's statement that Plaintiff's research "did not look promising" could be understood to mean that Plaintiff's research was poor or substandard according to some objective measure.  [Dkt. No. 35-1 at 9-11].  Plaintiff also argues that where a statement was made with malice, the privilege for employer communications does not apply.  *Id.*

Under Connecticut law, to establish a prima facie case of defamation a plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

*Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 364 (D. Conn. 2014) (quotations omitted).  "[A] defamation claim requires a statement that is an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 503 (D. Conn. 2009).  However, where statements may "reasonably be read to imply that they are based on undisclosed defamatory facts," a defamation claim may survive a motion to dismiss.  *Id.* at 504-05.  While "communications between managers regarding the review of an employee's job performance . . . are protected by a qualified privilege," this privilege fails where the declarant has "knowledge of [a statement's] falsity or reckless disregard as to its truth."  *Torosyan v. Boehringer Ingelheim Pharm., Inc.*, 234 Conn. 1, 29 (1995)

In this case, Plaintiff has alleged that Seli maliciously criticized the quality of the Plaintiff's scientific research solely to retaliate against her. Seli published that he did not believe the Plaintiff's research was "promising," while implying that this assessment was based on some objective measure of scientific achievement.  Plaintiff has therefore properly alleged that Seli's statement was defamatory.  *Cf. Hutchinson v. Proxmire*, 443 U.S. 111, 116 (1979) (suggesting that statements intimating that a scientist's research was "perhaps duplicative" and "transparent[ly] worthless[]" were defamatory).

19

The Plaintiff does not allege that any person to whom Seli made disparaging comments about the Plaintiff acted on or repeated them. She does not allege that she encountered anyone in the course of her job search or elsewhere who was aware of Seli's statements.  Nor does she allege that she was compelled to disclose them herself.  Even if she had, generally, Connecticut does not recognize self-publication as a basis for a defamation claim.  *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004).  However she has not alleged any facts tending to show that she suffered reputational damage.  Accordingly her defamation claim is denied. The complaint does not allege all of the essential elements of a defamation claim and therefore Count Six is DISMISSED without prejudice to refiling within 14 days of the date of this decision.

### 3.   Count Seven:  Negligent Infliction of Emotional Distress

Seli argues that Plaintiff's negligent infliction of emotional distress claim should be dismissed, because she did not allege that the conduct at issue occurred during the termination process.  [Dkt. 19-1 at 12-13]. "Negligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.'"  *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88 (1997) (quoting *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345 (1978)).  Plaintiff does not allege that one or more specific events precipitated her constructive discharge. Rather, she alleges that Seli was generally hostile and threatening between

20

late June 2014 and September 6, 2014, and coerced her into a sexual relationship for two years before that.  The allegations in this case are consistent with those alleged in *Pecoraro v. New Haven Register*, which dismissed a negligent infliction of emotional distress case based on "harassment and retaliation that allegedly occurred over the course of her entire employment relationship with defendant," 344 F. Supp. 2d 840, 847 (D. Conn. 2004).  Count Seven must therefore be DISMISSED.

### 4.  Counts Eight and Nine:  Invasion of Privacy

Seli argues that Plaintiff did not specify what information was allegedly disseminated about her, or that such information is "highly offensive to a reasonable person."  [Dkt 19-1 at 13-15].  The Complaint alleges in conclusory fashion that Seli shared "private details of [Plaintiff's] personal and professional life with others, including his wife."  [Compl. ¶¶ 42].  It did not specify what this private information consisted of, or how many "others" learned of the information.  Plaintiff's allegations are so vague and conclusory that they fail to put the Defendants on notice of her claims as required by Federal Rule of Civil Procedure 8.  In addition, because Plaintiff offered no argument in support of these claims in her brief, the court assumes these counts have been abandoned.  Accordingly, Counts Eight and Nine are DISMISSED without prejudice to refiling within 14 days of the date of this decision.

V.      **Conclusion**

For the foregoing reasons, Seli's Motion to Dismiss [Dkt. No. 19] is GRANTED, and Yale's Motion to Dismiss [Dkt. No. 23] is GRANTED-IN-PART and DENIED-IN-PART.  Plaintiff is directed to file an amended complaint consistent with this ruling within 14 days of the date of this decision.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  March 6, 2017

22