**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

```
-------------------------------------------------------x
                                                       |
ASLI UYAR                                              |   CIVIL ACTION NO.:
      Plaintiff                                        |
                                                       |
VS.                                                    |   3:16-cv-00186-VLB
                                                       |
EMRE SELI and YALE UNIVERSITY                          |   MARCH 20, 2017
      Defendants                                       |
                                                       |
-------------------------------------------------------x
```

**AMENDED COMPLAINT**

1.    This is an action to address sexual harassment and sex discrimination in violation of the Title VII of the Civil Rights Act of 1967, discrimination in violation of Title IX, as well as violations of the common law of the State of Connecticut.

2.    At all times set forth herein, the Plaintiff, Asli Uyar, was a resident of the Town of Branford, State of Connecticut.

3.    Yale University ("Defendant Yale") is a specially chartered non-profit corporation located in New Haven, Connecticut.

4.    Plaintiff is a national of the country of Turkey.

5.    Plaintiff holds a Ph.D. in Computer Science.

6.    In August of 2011, Plaintiff was hired by Defendant Yale for the position of post-doctoral fellow in its School of Medicine's Department of Obstetrics, Gynecology, and Reproductive Sciences doing research in the area of early embryo genetics.

7. In this position Plaintiff was supervised by Dr. Emre Seli ("Defendant Seli"), Professor of Obstetrics, Gynecology and Reproductive services, who ran the lab where Plaintiff was performing her research.

8. In Plaintiff's position with Defendant Yale, Defendant Seli held almost total control over her in that her salary, and therefore her job itself, were dependent on grant money obtained by Dr. Seli. Should Dr. Seli decide not to continue to fund Plaintiff's position, Plaintiff would lose her job.

9. Additionally, to continue to advance in her field, Plaintiff was dependent on positive recommendations from Defendant Seli to obtain other positions or to publish in academic journals.

10. Moreover, in that Plaintiff's visa to work in the United States was dependent upon maintaining her employment with Defendant Yale, should Defendant Seli choose to discontinue Plaintiff's position, Plaintiff could potentially be forced to leave the country.

11. In or around the summer of 2012, Defendant Seli, who is married, began to pursue a romantic relationship with Plaintiff.

12. Though Plaintiff was initially resistant to Defendant Seli's advances, in September of 2012, Plaintiff began to engage in a romantic and sexual relationship with Defendant Seli.

13. On multiple occasions during the ensuing sexual relationship, Plaintiff attempted to end things with Defendant Seli.

14. On each occasion when Plaintiff attempted to break off the relationship, he coerced Plaintiff into staying in the relationship by threatening

that Plaintiff would lose her job or that it would impossible for her to continue working with him at Defendant Yale if Plaintiff ended the relationship.

15. These threats always persuaded Plaintiff to remain in a relationship with Defendant Seli because not only was he threatening Plaintiff's job, but he was also threatening her ability to remain in the United States.

16. In approximately March or April of 2014, Plaintiff attempted to end the relationship once again. Defendant Seli responded by again referring to the fact that he would not be able to continue to work with Plaintiff. Out of fear that she would be terminated if she broke off the relationship, Plaintiff went so far as to begin looking for another position.

17. Despite Plaintiff's efforts to end the relationship, she feared the consequences of doing so, and as a result, her relationship with Defendant Seli relationship continued until May 31, 2014.

18. On that date, Defendant Seli's wife discovered the relationship between him and Plaintiff.

19. Defendant Seli was afraid of the effect that the relationship could have on his career, and as a result, Defendant Seli immediately set out to end Plaintiff's employment with Defendant Yale.

20. On June 1, 2014, the next day after his wife learned about the relationship, he sent an email to the Business Manager for the Department of Obstetrics, Gynecology, and Reproductive Sciences in which he claimed that Plaintiff's research "did not look promising for next year and I think we may not renew her appointment."

21. This email was also forwarded to Defendant Seli's wife.

22. Also on June 1, 2014, Defendant Seli sent a similar email to Maria Lalioti, a former Yale Assistant Professor who remained affiliated with Yale who now worked in the private sector with a company in Boston, Massachusetts known as Biogen.

23. In this email Defendant Seli repeated to Ms. Lalioti that Plaintiff's research "did not look promising for next year and I think we may not renew her appointment."

24. In the email, Defendant Seli also stated to Ms. Lalioti that he "had a lot to talk to [her] about."

25. Also on June 1, 2014, Defendant Seli abruptly cancelled Plaintiff's major research project.

26. This was particularly damaging to Plaintiff's professional reputation, as post-doctorate fellows are expected to produce a major research project and publication, and failure to do so would be fatal to Plaintiff's further career prospects in academia.

27. Defendant Seli threatened Plaintiff by stating that if she went to work, other employees, Plaintiff's family, or her friend would find out about the relationship and that her reputation would be ruined because she would be perceived as sexually promiscuous.

28. Defendant Seli forwarded emails in which he had suggested Plaintiff's fellowship would not be renewed and in which he had cancelled her research project to his wife, even though his wife had no professional

involvement with the Plaintiff and no legitimate business reason for being included on those email.

29. Defendant Seli also communicated to Plaintiff that he had shared the text messages he and Plaintiff had exchanged with his wife and communicated to his wife the details of their affair and their sexual relationship.

30. Also on June 1, 2014, Defendant Seli cancelled Plaintiff's flight and registration at a professional conference she was scheduled to attend on behalf of the Department of Obstetrics, Gynecology, and Reproductive Sciences.

31. Also on June 1, 2014, even though Plaintiff's appointment had not ended and she was still employed by Defendant Yale, Defendant Seli requested that Plaintiff not return to the research laboratory.

32. Defendant Seli threatened Plaintiff by stating that if she went to work, other employees, Plaintiff's family, or her friend would find out about the relationship and that her reputation would be ruined because she would be perceived as sexually promiscuous, immoral, or unethical.

33. Defendant Seli further threatened Plaintiff by claiming that she had falsified her curriculum vitae and suggested that if she did not go away he would disclose this information and ruin Plaintiff's academic career.

34. This threat was particularly egregious, as Plaintiff had previously changed her curriculum vitae at his suggestion to remove an assistant professor position that she had held in Turkey so that she could qualify for her position at Yale.

35. Afraid of Defendant Seli and his threats, Plaintiff initially complied with his directive.

36. In or about the second week of June of 2014, Defendant Seli met with Ms. Lalioti as first discussed in the June 1, 2014 email he sent to her.

37. During this meeting, Defendant Seli discussed the cancellation of the Plaintiff's research project and again informed Ms. Lalioti that he had discontinued Plaintiff's assignment due to her research not appearing promising.

38. During this meeting, Defendant Seli also communicated details of he and Plaintiff's affairs and sexual relationship to Ms. Lalioti.

39. Thereafter, Plaintiff had a conversation with Ms. Lalioti in which expressed surprise and disappointment at the supposed "failure" of Plaintiff's research project.

40. On June 18, 2014, Plaintiff was sent an email by Defendant Yale indicating that her position with Department of Obstetrics, Gynecology, and Reproductive Sciences would expire on August 18, 2014.

41. On June 24, 2104, Plaintiff went to her Department Chair, Hugh Taylor, and reported the relationship and that she had been threatened by Defendant Seli not to return to work.

42. In response to Plaintiff's complaint, Dr. Taylor returned Plaintiff to work immediately.

43. When Plaintiff returned to work, Defendant Seli's demeanor toward her changed and he became cold, hostile, and threatening whenever he interacted with Plaintiff.

44. For example, he would meet with all of the research staff and specifically exclude Plaintiff from those meetings and otherwise took steps to prevent Plaintiff's involvement in ongoing research projects.

45. Defendant Seli went so far as to schedule his wife, who is also a physician, to attend a conference where Plaintiff was previously scheduled to be a presenter in the hope that Plaintiff would be intimidated and choose not to attend the conference.

46. As a consequence of Defendant Seli's affirmative attempts to separate Plaintiff from her employment with Defendant Yale, Plaintiff was placed in great fear for her professional reputation, as well as her ability to remain and work in the United States.

47. Plaintiff was therefore forced to look for a new job. Due to the time constraints involved, Plaintiff was forced to accept a less prestigious position than the one she held with Defendant Yale.

48. Subsequent to Plaintiff's constructive discharge from Defendant Yale, Plaintiff was contacted by Defendant Seli on several occasions, the last time occurring on February 14, 2015, wherein he threatened Plaintiff with litigation if she attempted to pursue any type of sexual harassment claim or if she did not forget the relationship and not speak about it ever again.

49. Also subsequent to Plaintiff's constructive discharge from Defendant Yale, Plaintiff was prevented from accessing, communicating about, or having any role in ongoing research projects she had started, causing significant damage to her professional reputation.

50. Also subsequent to Plaintiff's constructive discharge from Defendant Yale, it published multiple articles concerning research Plaintiff had been involved in, without crediting Plaintiff or acknowledging her contributions.

**COUNT ONE:**     *Sex Discrimination in violation of Title VII (Yale University)*

1. The Plaintiff repeats and re-alleges Paragraphs 1 through 41 above as Paragraphs 1 through 41 of this First Count as if fully set forth herein.

42. The Defendant discriminated against the Plaintiff and ultimately terminate Plaintiff's employment because of her sex / gender, in violation of Title VII.

43. As a result of the foregoing unlawful conduct of the Defendant, the Plaintiff was denied the opportunity of gainful employment. As such, the Plaintiff has suffered a substantial loss of income, health benefits, and retirement benefits and will continue to suffer same all to his loss and detriment.

44. As a further result of the foregoing unlawful conduct, the Plaintiff has incurred attorney's fees and costs in order to obtain the right to which she is entitled.

45. Plaintiff filed a timely administrative complaint with the Equal Employment Opportunities Commission and received a Right to Sue Letter on December 1, 2015, which is attached hereto as <u>Exhibit A</u>.

**COUNT TWO:**     *Quid pro quo sexual harassment in violation of Title VII (Yale University)*

1. The Plaintiff repeats and re-alleges Paragraphs 1 through 41 above as Paragraphs 1 through 41 of this Second Count as if fully set forth herein.

42. The defendant made decisions regarding the Plaintiff's employment based on her submission to or rejection of unwelcome sexual conduct.

43. As a result of the foregoing unlawful conduct of the Defendant, the Plaintiff was denied the opportunity of gainful employment. As such, the Plaintiff has suffered a substantial loss of income, health benefits, and retirement benefits and will continue to suffer same all to his loss and detriment.

44. As a further result of the foregoing unlawful conduct, the Plaintiff has incurred attorney's fees and costs in order to obtain the right to which she is entitled.

45. Plaintiff filed a timely administrative complaint with the Equal Employment Opportunities Commission and received a Right to Sue Letter on December 1, 2015, which is attached hereto as <u>Exhibit A</u>.

<u>COUNT THREE</u>:   *Retaliation in violation of Title VII (Yale University)*

1. The Plaintiff repeats and re-alleges Paragraphs 1 through 41 above as Paragraphs 1 through 41 of this Second Count as if fully set forth herein.

42. The Plaintiff opposed the foregoing unlawful conduct of the Defendant, as set forth above.

43. The Defendant retaliated against the Plaintiff based on her opposition to the foregoing unlawful conduct, inter alia, terminating her employment.

44. As a result of the foregoing unlawful conduct of the Defendant, the Plaintiff was denied the opportunity of gainful employment. As such, the Plaintiff

9

has suffered a substantial loss of income, health benefits, and retirement benefits and will continue to suffer same all to his loss and detriment.

45. As a further result of the foregoing unlawful conduct, the Plaintiff has incurred attorney's fees and costs in order to obtain the right to which she is entitled.

46. Plaintiff filed a timely administrative complaint with the Equal Employment Opportunities Commission and received a Right to Sue Letter on December 1, 2015, which is attached hereto as <u>Exhibit A</u>.

<u>COUNT FOUR</u>: *Sexual harassment in violation of Title IX of the Educational Amendments of 1972, 20 u.s.c. §1681 et seq. (Yale University)*

**DISMISSED**

<u>COUNT FIVE</u> – *Tortious Interference with Business Expectancy (Emre Seli)*

**DISMISSED**

<u>COUNT SIX</u> – *Defamation (Emre Seli)*

1. The Plaintiff repeats and re-alleges Paragraphs 1 through 41 above as Paragraphs 1 through 41 of this Sixth Count as if fully set forth herein.

42. Defendant Seli made intentionally false statements about the Plaintiff and her work, as set forth above, to employees of Yale and one of Plaintiff's scientific peers working in the private sector.

43. Defendant Seli knew that these statements were false, and made them for the express purpose of damaging the Plaintiff's career, separating her employment from Defendant Yale, and otherwise causing harm to the Plaintiff's character and reputation.

10

44.     As a result of Defendant Seli's false statements about the Plaintiff, her reputation was harmed.

**COUNT SEVEN** – *Negligent Infliction of Emotional Distress (Emre Seli)*

**DISMISSED**

**COUNT EIGHT** – *Invasion of Privacy – Unreasonable Publicity (Emre Seli)*

1.      The Plaintiff repeats and re-alleges Paragraphs 1 through 41 above as Paragraphs 1 through 41 of this Eighth Count as if fully set forth herein.

42.     Defendant Seli shared private details of Plaintiff's personal and professional life with others, including his wife, as set forth above.

43.     The persons with whom Defendant Seli shared Plaintiff's private information with persons who had no legitimate reason for knowing this information.

44.     As a result of Defendant Seli's actions, Plaintiff suffered damage to her career, separation of her employment from Defendant Yale, and otherwise suffered harm to her character and reputation.

45.     As a result of the foregoing actions of Defendant Seli, the Plaintiff suffered emotional distress including, *inter alia*, stress, anxiety, fearfulness, and loss of self-worth.

**COUNT NINE** – *Invasion of Privacy – False Light (Emre Seli)*

1.      The Plaintiff repeats and re-alleges Paragraphs 1 through 41 above as Paragraphs 1 through 41 of this Ninth Count as if fully set forth herein.

42.     Defendant Seli shared private information about the Plaintiff, including his sexual relationship with the Plaintiff, and his and Plaintiff's intimate

11

text conversations, with others, including his wife and Ms. Lalioti, as set forth above, the purpose and effect of which was to place the Plaintiff in a false light.

43. As a result of Defendant Seli's actions, Plaintiff suffered damage to her Plaintiff's, separation of her employment from Defendant Yale, and otherwise suffered harm to her character and reputation.

44. As a further result of the foregoing actions of Defendant Seli, the Plaintiff suffered emotional distress including, *inter alia*, stress, anxiety, fearfulness, and loss of self-worth.

**COUNT TEN** – *Negligent Supervision (Yale University)*

1. The Plaintiff repeats and re-alleges Paragraphs 1 through 41 above as Paragraphs 1 through 41 of this Ninth Count as if fully set forth herein.

42. Defendant Yale had a number of policies in place to supervise its employees and that prohibited the aforesaid actions of Defendant Seli.

43. Defendant Yale failed to supervise Defendant Seli in accordance with its own policies.

44. Had Defendant Yale exercised reasonable care and supervised Defendant Seli in accordance with its own policies, it could and would have discovered Defendant Seli's violation of its policies.

45. Defendant Yale's failure to supervise Defendant Seli in accordance with its own policies subjected Plaintiff to the foregoing actions of Defendant Seli.

46. As a result of Defendant Yale's failure to supervise Defendant Seli, Plaintiff suffered damage to her career, separation of her employment from Defendant Yale, and otherwise suffered harm to her character and reputation.

47. As a further result of the foregoing actions of Defendant Seli, the Plaintiff suffered emotional distress including, *inter alia*, stress, anxiety, fearfulness, and loss of self-worth.

WHEREFORE, the Plaintiff prays for the following relief:

1. Monetary damages;

2. Punitive damages;

3. Costs and reasonable attorney's fees incurred in connection with this action;

4. Such additional or alternative relief as may appear to the Court to be just and equitable.

>THE PLAINTIFF,
>ASLI UYAR
>
>BY:  /s/ *Michael J. Reilly*
>Michael J. Reilly (ct28651)
>CICCHIELLO & CICCHIELLO, LLP
>364 Franklin Avenue
>Hartford, CT 06114
>Tel: (860) 296-3457
>Fax: (860) 296-3457
>Email: mreilly@cicchielloesq.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       |
ASLI UYAR                                              |   CIVIL ACTION NO.:
      Plaintiff                                        |
                                                       |
VS.                                                    |   3:16-cv-00186-VLB
                                                       |
EMRE SELI and YALE UNIVERSITY                          |   MARCH 20, 2017
      Defendants                                       |
                                                       |
-------------------------------------------------------x
```

## REQUEST FOR A TRIAL BY JURY

**Plaintiff hereby requests a trial by jury in this matter.**

                                      THE PLAINTIFF,
                                      ASLI UYAR

                                      BY:  /s/ *Michael J. Reilly*
                                      **Michael J. Reilly (ct28651)**
                                      **Cicchiello & Cicchiello, LLP**
                                      **364 Franklin Avenue**
                                      **Hartford, CT 06114**
                                      **Tel: (860) 296-3457**
                                      **Fax: (860) 296-3457**
                                      **Email: mreilly@cicchielloesq.com**

## **EXHIBIT A**